IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

BRYAN PRINSEN and DANIEL ODEN                                                                 PLAINTIFFS

v.                                          Case No. 4:22-cv-4076

DOMTAR A.W., LLC                                                                                DEFENDANT

## ORDER

Before the Court is Defendant's Motion for Judgment on the Pleadings. ECF No. 14. Plaintiffs have responded. ECF No. 16. Defendant has replied. ECF No. 20. The Court finds the matter ripe for consideration.

### I. BACKGROUND

Plaintiffs Bryan Prinsen ("Prinsen") and Daniel Oden ("Oden") are former employees of Defendant Domtar, A.W., LLC. ("Domtar"). Plaintiffs worked at Domtar's pulp and paper mill facility in Ashdown, Arkansas. Plaintiff Prinsen had been employed by Domtar for approximately eleven years prior to his termination and was most recently employed as a "Loader for the A1 fluff pulp machine." Plaintiff Oden had been employed for approximately three years prior to his termination and was most recently employed as a "No. 1 Pulp Mill Reserve." For approximately two years prior to their termination, Plaintiffs were qualifying medical marijuana patients under Amendment 98 to the Arkansas Constitution ("Amendment 98").

On February 4, 2022, Domtar entered into a new collective bargaining agreement with the United Steelworkers Local 13-1327 Union ("Union"). ECF No. 7-1. The new collective bargaining agreement implemented a revised Drug and Alcohol Policy that designated Domtar's facility as a drug-free workplace and outlined various drug testing requirements and procedures for its employees. ECF No. 7-2. The Drug and Alcohol Policy listed Plaintiffs' employment

positions among those labeled "safety sensitive." ECF No. 7-2, p. 7-10. After the implementation of the Drug and Alcohol Policy, Plaintiffs tested positive for marijuana and were put on disciplinary suspension. Pursuant to the collective bargaining agreement, Plaintiffs and the Union signed a Last Chance Agreement that required certain conditions to be met prior to being permitted to return to work. ECF Nos. 7-5 and 7-6. The Last Chance Agreement required, among several other things, that Plaintiffs produce a negative drug test prior to the end of their suspension period in order to return to work. ECF Nos. 7-5 and 7-6. Plaintiff Oden was terminated from his employment on June 13, 2022, for failing to adhere to the terms of the Last Chance Agreement. Plaintiff Prinsen was terminated from his employment on July 12, 2022, for failing to adhere to the terms of the Last Change Agreement.

Plaintiffs filed their initial Complaint in the Circuit Court for Little River County, Arkansas on July 29, 2022. ECF No. 2-1, p. 1-8. Plaintiffs filed their First Amended Complaint on August 29, 2022. *Id*. at p. 13-21. Domtar subsequently removed the matter to this Court, alleging federal jurisdiction pursuant to 28 U.S.C. § 1332.[1] ECF No. 2. After the initial answer by Domtar (ECF No. 7), Plaintiffs submitted their Second Amended Complaint (ECF No. 9). Plaintiffs' claim alleges that Domtar violated their civil rights under the Arkansas Constitution by terminating their employment because of their protected status as medical marijuana patients and engaging in unlawful employment practices under the Arkansas Civil Rights Act, Ark. Code § 16-123-101, *et seq*. ("ACRA"). ECF No. 9, p. 5-9. Specifically, Plaintiffs allege that Defendant violated Amendment 98 § 3(f)(3)(A), which prohibits employers from terminating employees based on their status as qualifying medical marijuana patients.

---

[1] Plaintiffs are both citizens of Arkansas. Domtar is a limited liability company incorporated in Delaware. Domtar's Notice of Removal asserts that the damages sought by Plaintiffs exceeds $75,000, and Plaintiffs have not disputed that the amount in controversy exceeds $75,000. Accordingly, the Court is currently satisfied that it has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

On December 19, 2022, Domtar filed the instant motion seeking judgment on the pleadings. Domtar generally argues that its termination of Plaintiffs is clearly permitted under Amendment 98 § 3(f)(3)(B)-(C) and that Plaintiffs' alleged facts show that Domtar is entitled to judgment in its favor. ECF No. 15, p. 6-21. Plaintiffs responded in opposition, generally arguing that the Arkansas Constitution must be read in a manner that allows for the claim Plaintiffs have alleged and that Plaintiffs' positions were not properly designated as "safety sensitive." ECF No. 16, p. 5-8. Domtar argues in reply that a straightforward reading of Amendment 98 clearly precludes Plaintiffs' claims. ECF No. 20, p. 2-10.

## II. STANDARD OF REVIEW

**A. Applicable Law and Statutory Interpretation**

Federal courts sitting in diversity generally apply the substantive law of the forum state. *See Holbein v. TAW Enterprises, Inc.*, 983 F.3d 1049, 1061 (8th Cir. 2020) (citation omitted). Arkansas substantive law applies because Arkansas is the forum state, Plaintiffs' claim is pursuant to the Arkansas Constitution, and the parties' arguments presume the application of Arkansas law. However, federal procedural law governs the procedural standards for diversity cases. *Smith v. Toyota Motor Corporation*, 964 F.3d 725, 728 (8th Cir. 2020).

When the highest court of the forum state has not addressed the state law issue presented to a federal court sitting in diversity, the federal court must rule in the manner it believes the highest forum court would rule. *See Holbein*, 983 F.3d at 1061. The Arkansas Supreme Court summarized its approach to statutory interpretation by stating:

> In determining the meaning of a statute, the first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. This court construes the statute so that no word is left void, superfluous, or insignificant, and meaning and effect are given to every word in the statute if possible. When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory

> construction. However, this court will not give statutes a literal interpretation if it leads to absurd consequences that are contrary to legislative intent.

*SubTeach USA v. Williams*, 2010 Ark. 400, at 7, 373 S.W.3d 884, 888-89 (internal citations omitted).

### B. Judgment on the Pleadings Standard

A party may move for judgment on the pleadings after the pleadings have closed. Fed. R. Civ. P. 12(c). In deciding a Rule 12(c) motion, courts apply the same legal standard used for a motion to dismiss under Rule 12(b)(6). *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). A pleading must state "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this standard and to survive a Rule 12(b)(6) motion, a complaint need only state factual allegations sufficient to raise a right to relief above the speculative level that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Courts deciding a Rule 12(c) motion are required to accept as true the complaint's well-pled allegations and must resolve all inferences in the plaintiff's favor. *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006). However, this tenet does not apply to legal conclusions, "formulaic recitation of the elements of a cause of action," or naked assertions which are so indeterminate as to require further factual enhancement. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Wishnatsky*, 433 F.3d at 610.

When considering a motion for judgment on the pleadings, courts must generally ignore all materials outside the pleadings. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). However, courts may consider "some materials that are part of the public record or do not contradict the complaint . . . as well as materials that are necessarily embraced by the pleadings." *Id.* (internal quotation marks omitted). "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

### III. DISCUSSION

#### A. Amendment 98 and ACRA

Amendment 98 is known as the "Arkansas Medical Marijuana Amendment of 2016." Ark. Const. Amend. 98, § 1. Amendment 98 defines "Qualifying Patient" as a "person who has been diagnosed by a physician as having a qualifying medical condition and who has registered with the department under § 5 of this amendment." *Id*. § 2(14)(A). Section 5 of Amendment 98 details the necessary steps to be registered as a "Qualifying Patient" permitted to use prescription medical marijuana and receive a registry identification card. *Id*. § 5(a)(1)-(3).

Section 3(f)(3)(A) of Amendment 98 states that "[a]n employer shall not discriminate against an applicant or employee in hiring, termination, or any term or condition of employment, or otherwise penalize an applicant or employee, based upon the applicant's or employee's past or present status as a qualifying patient." However, § 3 of Amendment 98 also precludes claims against employers for certain actions taken against qualifying patients:

> (B) A cause of action shall not be established against an employer based upon, and an employer is not prohibited from, any of the following actions:
>
> (i) Establishing and implementing a substance abuse or drug-free workplace policy that may include a drug testing program that complies with state or

>> federal law and taking action with respect to an applicant or employee under the policy; [or]
>
> (iii) Acting to exclude a qualifying patient from being employed in or performing a safety sensitive position based on the employer's good faith belief that the qualifying patient was engaged in the current use of marijuana.

*Id*. § 3(f)(3)(B)(i) and (iii).

> Relevant to § 3(f)(3)(B)(iii), "safety sensitive position" is defined as:
>
> "[A]ny position designated in writing by an employer as a safety sensitive position in which a person performing the position while under the influence of marijuana may constitute a threat to health or safety, including without limitation a position:
>
>> (i) That requires any of the following activities:
>>
>>> (a) Carrying a firearm;
>>>
>>> (b) Performing life-threatening procedures;
>>>
>>> (c) Working with confidential information or documents pertaining to criminal investigations; or
>>>
>>> (d) Working with hazardous or flammable materials, controlled substances, food, or medicine; or
>>
>> (ii) In which a lapse of attention could result in injury, illness, or death, including without limitation a position that includes the operating, repairing, maintaining, or monitoring of heavy equipment, machinery, aircraft, motorized watercraft, or motor vehicles as part of the job duties[.]

*Id*. § 2(25)(B). "'Current use of marijuana' is presumed when a positive test result for marijuana occurs." *Id*. § 2(20)(B). Suspending or terminating employees pursuant to Section 3(f)(3)(B) is an authorized and protected action by an employer. *Id*. § 3(f)(3)(C)(iv).

"The Arkansas Civil Rights Act provides citizens of this state legal redress for civil-rights violations of state constitutional or statutory provisions, hate offenses, and discrimination offenses." *Greenlee v. J.B. Hunt Transport Services*, 2009 Ark. 506, at 3-4, 342 S.W.2d 274, 277. Under ACRA, every person who, acting under color of law, deprives an individual of their rights

6

under the Arkansas Constitution shall be liable to the injured party.  Ark. Code Ann. § 16-123-105(a).  Under Ark. Code § 16-123-105(a), the alleged misconduct must be done by one who can be considered a state actor.  *See Rudd v. Pulaski County Special School Dist.*, 341 Ark. 794, 797-98, 20 S.W.3d 310, 312-13 (Ark. 2000).  ACRA also establishes the right of an individual to be free from discrimination in obtaining and holding employment because of their race, religion, gender, national origin, or disability.   Ark. Code Ann. § 16-123-107(a)(1).

### B. Parties' Arguments and Court Analysis

Defendant Domtar primarily argues that the facts alleged by Plaintiffs indicate that Domtar's action in terminating Plaintiffs' employment is explicitly permitted under Amendment 98.  Domtar first contends that the clear language of Amendment 98 § 3(f)(3)(A) only prohibits firing an employee based on their "status" as a past or present qualifying patient, and not for their use of marijuana.  ECF No. 15, p. 13-15.  Domtar then contends that the claim put forth by Plaintiffs is explicitly barred under Amendment 98 §§ 3(f)(3)(B)(i) and (iii) because it relates to actions Domtar took to implement a drug-free workplace and exclude qualifying patients from safety sensitive positions, respectively.  *Id*. at p. 15-19.  Domtar also argues that Plaintiffs' claim fails under ACRA because it alleges no deprivation of a right by a state actor and because it alleges no employment discrimination based on any of the statutorily protected categories.  *Id*. at p. 20-21. Finally, Domtar argues that Plaintiffs' execution of the Last Chance Agreements, which noted that continued employment is conditioned on adherence to its terms, functioned as a waiver of Plaintiffs' claim.  *Id*. at p. 21-23.

Plaintiffs' response in opposition first argues that the instant motion should be evaluated as a motion for summary judgment because of Domtar's reliance on the Drug and Alcohol Policy

and Last Chance Agreements, which were not attached to Plaintiffs' pleading.[2] ECF No. 16, p. 2-5. Next, Plaintiffs argue that the legislative history of Amendment 98 requires that it be read to protect them from the adverse employment action taken against them by Domtar. *Id*. at p. 10-15. Plaintiffs then argue that their claim is clearly applicable under the plain text of Amendment 98. *Id*. at p. 16-24. Plaintiffs contend that they were indisputably "qualifying patients" afforded the employment protections of Amendment 98 § 3(f)(3)(A). *Id*. at p. 16-17. Plaintiffs then contend that the drug free workplace provision of § 3(f)(3)(B)(i) cannot be read to permit firing for a positive marijuana test without contradicting the employment protections afforded by § 3(f)(3)(A). *Id*. at p. 17-19. Plaintiffs also contend that they were not employed in positions designated as safety sensitive under § 3(f)(3)(B)(iii). *Id*. at p. 19-24. Plaintiffs support this contention by arguing that: 1) Domtar did not truly "designate" their positions in writing as safety sensitive because all other employees at the facility were similarly designated, 2) that the designation was not "in writing" because the Drug and Alcohol Policy was adopted after Plaintiffs had already been employed by Domtar, and 3) that the inclusion of every other position in the list of safety sensitive positions means that Plaintiffs' positions were not genuinely safety sensitive. *Id*. Plaintiffs also argue that their claim is proper under ACRA because their status as qualifying medical marijuana patients should afford them protections from discrimination in employment based upon disability. *Id*. at p. 24-26. Finally, Plaintiffs argue that the Last Chance Agreement is unenforceable because constitutional and statutory rights could not be waived in this circumstance. *Id*. at p. 26-27.

---

[2] Plaintiffs contend that an Arkansas court faced with a motion for judgment on the pleadings on an identical claim and in a similar procedural posture determined that the motion should be denied. Plaintiffs cite to *Reed et al, v. Northwest Arkansas Hospitals*, LLC, 72CV-21-931, in which the Circuit Court of Washington County determined that the company policy documents attached to the employer defendant's motion was a matter outside the pleadings and that the motion needed to be evaluated as one for summary judgment. ECF No. 16-1.

In reply, Domtar first argues that the instant motion should not be converted to one for summary judgment because the exhibits attached to the instant motion were referenced and embraced by Plaintiffs' complaint. ECF No. 20, p. 2-4. Domtar then argues that a straightforward reading of the text of Amendment 98 clearly precludes the exact claim brought by Plaintiffs and that any examination of the legislative history of the amendment is wholly unnecessary. *Id*. at p. 4-9. Specifically, Domtar contends that Plaintiffs are falsely equating status as a qualifying patient with actual use of marijuana. *Id*. at p. 5-6. Domtar notes that the employment protections of § 3(f)(3)(A) only apply to one's status as a qualifying patient, while employers acting to terminate an employee for the use of marijuana, whether through implementing a drug free workplace policy or excluding an employee from a safety sensitive position, is clearly protected under the plain language of §§ 3(f)(3)(B) and (C). *Id*. at p. 5-7. Domtar also argues that Plaintiffs' assertion regarding a failure to designate their positions as safety sensitive is without merit and directly contradicted by their alleged facts. *Id*. at p. 7-9. Domtar contends that Plaintiffs' argument requires interpreting Amendment 98 to include additional conditions beyond its clear text and that Planitffs' own allegations, that the written Drug and Alcohol policy lists their positions as those in the "safety sensitive" category, shows that Domtar adhered to every requirement of § 3(f)(3)(B)(iii). *Id*. Domtar then argues that Plaintiffs never made any allegations regarding discharge based on disability in their complaint and thus have objectively failed to allege any claim recognized under ACRA. *Id*. at p. 9-10. Lastly, Domtar argues that Plaintiffs' argument regarding the waiver of their rights does not apply to private employers and is also preempted by the Labor Relations Management Act ("LRMA"). *Id*. at p. 10-12.

The Court finds that the instant motion should be granted. First, the Court notes that it considers the Drug and Alcohol Policy as part of the pleadings. Though not specifically named or

attached to Plaintiffs' complaint, they make reference to the policy and its impact on Plaintiffs in support of their factual allegations that attempt to establish their claim. ECF No. 9, pp. 2, 4-5, 8. Therefore, the Court finds that this document is among the "materials that are necessarily embraced by the pleadings," and that its use by the Court does not require converting the instant motion into one for summary judgment. *Porous Media Corp.*, 186 F.3d at 1079.

Next, taking the well-plead factual allegations as true and making all references in Plaintiffs' favor, the Court finds that Plaintiffs' complaint alleges a claim that is clearly barred under the plain language of § 3(f)(3)(B)(iii). Under §§ 3(f)(3)(B)(iii) and (C)(iv), employers are explicitly protected against claims related to terminating a qualifying patient from a safety sensitive position based upon a good faith belief that the patient was engaged in the current use of marijuana. Under § 2(20)(B), "current use of marijuana" is be presumed after a positive test for marijuana occurs. Plaintiffs' factual allegations admit that they tested positive for marijuana after implementation of the Drug and Alcohol Policy. Under § 2(25)(B), "safety sensitive position" may be any position designated as such by the employer in writing. The Drug and Alcohol Policy is part of the written agreement between Domtar and the Union and lists Plaintiffs' employment positions under the category heading for "Safety Sensitive Positions." ECF No. 7-2, p. 7-10. Noting that it must construe the statute "just as it reads" and give its words "common" meaning, the Court views Plaintiffs' alleged facts working in lockstep with the language of Amendment 98 in shielding Domtar from this claim. *SubTeach USA*, 2010 Ark. 400, at 7, 373 S.W.3d at 888-89.

The Court is not persuaded by Plaintiffs' arguments in opposition. Just as they do in their complaint, Plaintiffs' response consistently and erroneously treats employment protections for one's "status" as a qualifying patient under § 3(f)(3)(A) as equivalent to protections for the use of marijuana. The reality of this difference within Amendment 98 is clear based upon the separate

and distinct definitions of "qualifying patient" and "current use of marijuana" under §§ 2(14)(A) and 2(20), respectively. This distinction is also obvious in how § 3(f)(3)(B)(iii) instructs that "current use of marijuana" is an action that could authorize an employer to terminate a "qualifying patient." Rather than creating harmony in reading Amendment 98, Plaintiffs' interpretation in treating status as a qualifying patient and marijuana use as equivalent creates discord within the statute.

Plaintiffs' argument regarding Domtar's alleged failure to designate their positions as "safety sensitive" is also not compelling. Plaintiffs' complaint does not allege that their employment positions could not reasonably be considered safety sensitive in light of the guidance put forth in §§ 2(25)(B)(i) and (ii). Instead, Plaintiffs only provide conclusory statements that their positions were not truly designated as safety sensitive, while also referencing the Drug and Alcohol Policy that directly contradicts their assertion. Their employment positions were clearly listed within the "Safety Sensitive Positions" section of that written document. The Court struggles to imagine a more direct adherence to the definitional requirement under § 2(25)(B) that the safety sensitive position be "designated in writing."

Plaintiffs' contention that Domtar failed to meet this requirement because of the inclusion of all other employment positions within the "safety sensitive" category is also not persuasive. Plaintiffs' offered interpretation necessitates reading more requirements for designating a position as safety sensitive than the clear text of § 3(f)(3)(B)(iii) or § 2(25)(B) contains. There is no reference in the text to a limit on the number of employees that could be designated or a need to weigh the appropriateness of any individual designation in light of other designations. Plaintiffs' other contention that permitting all employees to be designated as such contradicts the intended employment protections of § 3(f)(3)(A) is similarly unpersuasive. As the Court already noted, this

11

argument stems from Plaintiffs incorrectly equating the employment protection for an individual's "status" as a qualifying patient with employment protections for an individual's use of marijuana. Additionally, § 3(f)(3)(B)(i) authorizes an employer to voluntarily implement their own drug-free workplace policy with corresponding drug testing to enforce such a policy. This further demonstrates that the statute makes a clear distinction between the employment protection offered to an individual's "status" as a qualifying patient under § 3(f)(3)(A) and an employer's authority to prohibit marijuana use among its employees.

Plaintiffs' complaint similarly fails to present any cognizable claim under ACRA. Plaintiffs' complaint contains no factual allegations that Domtar was a state actor, as required under Ark. Code § 16-123-105(a). *See Rudd*, 341 Ark. 794, at 797-98, 20 S.W.3d at 312-13. Plaintiffs' complaint also fails to allege that their employment was terminated because of discrimination based on any of the categories listed in Ark. Code. § 16-123-107(a). Plaintiffs' only suggestion of their employment being illegally terminated because of protected disability status under § 16-123-107(a) first occurred in their response to the instant motion and not in their complaint. Accordingly, Plaintiffs have failed to allege any facts to support a claim pursuant to ACRA.

In sum, the Court finds that Plaintiffs' alleged facts in the complaint clearly demonstrate that their claim is explicitly barred under Amendment 98 and that their claim is not recognized under ACRA. Therefore, examining the instant motion in the light most favorable to Plaintiffs and taking all of Plaintiffs' well-plead facts as true, the Court finds that Plaintiffs' have failed to plead facts that make Domtar's alleged misconduct sufficiently "plausible" to survive the instant motion. *See Iqbal*, 556 U.S. at 678; *Wishnatsky*, 433 F.3d at 610. Because Plaintiffs' claim clearly fails under Amendment 98 and ACRA, it is unnecessary to examine or make determinations

regarding Plaintiffs' waiver of rights through the Last Chance Agreement or federal preemption under LRMA.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Defendant Domtar's Motion for Judgment on the Pleadings (ECF No. 14) should be and hereby is **GRANTED**. Each Plaintiff's claim is hereby **DISMISSED WITH PREJUDICE**. Defendant Domtar's request for attorney's fees and costs is denied.

**IT IS SO ORDERED**, this 31st day of January, 2023.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge